**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GABRIEL BROWN and IVAN BROWN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 20-cv-4579 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| CACH, LLC and UNIFIN, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Defendant Unifin, Inc.'s motion for judgment on the pleadings [39] is granted with prejudice. Judgment will be entered in favor of Unifin and against Plaintiff Ivan Brown. Given the earlier settlement between Gabriel Brown and Unifin, Defendant Unifin will be dismissed from this case in its entirety. The case between Plaintiffs and Defendant CACH will proceed, with fact discovery to close in 28 days and a joint status report to be filed within 30 days thereafter [see 43, 50, 51].

I. **Factual Background**

In August 2020, Plaintiffs Gabriel and Ivan Brown,[1] who are sister and brother, filed this action alleging that Defendants Unifin, Inc. and CACH, LLC violated Section 1692e of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e. Gabriel reached a settlement with Unifin and dismissed her claims against that defendant with prejudice. [See 19.] Ivan then filed an amended complaint against both Defendants. Although both Defendants have answered [see 27, 29], Unifin has filed a motion for judgment on the pleadings [39] as well.

Ivan's claim against Unifin arises out of a single telephone call that Ivan placed to Unifin on June 15, 2020.[2] On that day, Ivan returned a call that Unifin had placed to his phone number seeking to reach Gabriel to collect a debt alleged owed by Gabriel to CACH.[3] According to Ivan's amended complaint [23, ¶¶ 8, 19], that debt was uncollectable because of its age. The transcript of the June 15, 2020 call makes clear that the Unifin representative thought he was speaking with Gabriel, but he actually was speaking with Ivan. To be sure, the representative asked if he was

---

[1] In the interest of clarity, the Court will refer to Plaintiffs by their first names as they have the same surname.

[2] The call was recorded, transcribed, and submitted by the parties in connection with the briefing on this motion.

[3] According to the complaint [see 23, ¶ 8], the original debt holder was Bank of America, but its interest in the debt had been transferred to CACH.

speaking with "Mr. Brown," to which Ivan (accurately) answered in the affirmative. But the representative then asked for confirmation of the last four digits of the caller's social security number, and Ivan confirmed his sister's digits as his own. The representative then provided information and answered Ivan's questions about a debt balance owed to Defendant CACH that Unifin was hoping to collect. Ivan contends that some of the statements made during the call were false and actionable under the FDCPA. Unifin counters that Ivan lacks standing to assert a claim relating to Unifin's attempt to collect his sister's debt.

## II.     Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. A Rule 12(c) motion tests the legal sufficiency of a complaint under the same standards applicable to a motion under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). In judging the sufficiency of a complaint, the Court is guided by familiar standards. To survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). In general, the inquiry is limited to the material facts alleged in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff. *Buchanan-Moore v. Cty. of Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009). "As the title of the rule implies, Rule 12(c) permits a judgment based on the pleadings alone…. The pleadings include the complaint, the answer, and any written instruments attached as exhibits." *R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989) (internal citations omitted). The District Court may not look beyond the pleadings, and all uncontested allegations to which the parties had an opportunity to respond are taken as true. *Flora v. Home Fed. Savings and Loan Assoc.*, 685 F.2d 209, 211 (7th Cir. 1982). The Court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 8(a).

## III.     Discussion

In their briefs, the parties focus on many aspects of the call and the inferences to be drawn from the interaction between Ivan and the Unifin representative. But only a few facts matter to the disposition of this claim and they are entirely undisputed. According to the amended complaint, the "debt account with a balance of $5,246.21" that was the subject of the call was "owed by Gabriel Brown." [23, ¶ 15]. Ivan initiated the call during which the allegedly actionable statements were made and the Unifin representative took steps to verify that the person with whom he was speaking was the alleged debtor, Gabriel. Only after Ivan confirmed the last four digits of his sister's Social Security number did the representative make the statements in question.

The first – and it turns out dispositive – question before the Court is whether Ivan has standing to assert a claim in these circumstances. The parties rightly focus the Court's attention on two Seventh Circuit decisions, *Todd v. Collecto, Inc.*, 731 F.3d 734 (7th Cir. 2013), and *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938 (7th Cir. 2011), which appear to be the leading cases in this circuit on standing under the FDCPA. Although *Todd* in no way suggested that it was overruling *O'Rourke* – and, in fact, the two cases involved different sections of the

2

statute – the panel in *Todd* explicitly stated its intent to "clarify" how broadly *O'Rourke* should be read. *Todd*, 731 F.3d at 736-37. In the discussion below, this Court endeavors to synthesize the guidance from these court of appeals decisions.

To begin, the Court notes that the claims in *Todd* arose under Sections 1692b(2) and 1692f of the FDCPA, while the claim in *O'Rourke* (as here) involved Section 1692e. In *Todd*, the court rejected any notion that proper plaintiffs in FDCPA cases can be determined on a uniform basis across the statute. Instead, "each provision of the FDCPA must be analyzed individually to determine who falls within the scope of its protection and thus decide 'with respect to' whom the provision can be violated." 731 F.3d at 738. Turning to the two specific provisions at issue, the court of appeals determined that Section 1692b(2) protects only "consumers," but that "anyone aggrieved by a debt collector's unfair or unconscionable collection practices can fall within the provision's zone of interest." *Id*. And, although no Section 1692e claim was asserted in the case, the *Todd* court also "clarif[ied] that *O'Rourke* should not be read to foreclose all FDCPA claims by persons other than customers and their proxies," *id*. at 737, though it did not delineate any more precisely who can and who cannot invoke Section 1692e. See also *Jordan v. BP Peterman Law Group, LLC*, 2019 WL 698459, at *3 (E.D. Wis. Feb. 20, 2019) (noting that the *Todd* court, in dicta, left open the possibility that non-consumers could have standing to sue under § 1692e).

Returning to *O'Rourke*, it is important to note at the outset, as the *Todd* panel did, that the "broad language" in the *O'Rourke* opinion must be understood in the context of the specific claim asserted—namely, that statements made in a pleading filed with a state court judge were actionable under Section 1692e. Whatever the "limiting principle" used to define the "zone of interest" to be protected by that section, it could not be read to extend to a judge, who neither "stand[s] in the shoes of the consumer," has a "special relationship" to the consumer, nor is either a consumer's advocate or adversary. *O'Rourke*, 635 F.3d at 944. In other words, the ruling that statements made to a state court judge were not actionable under the FDCPA did not necessarily foreclose actions based on statements made to third parties who were not "consumers" as to the specific debt in question. *Todd*, 731 F.3d at 738.

In the Section 1692e cases since *Todd*, district judges in this circuit have applied the "zone of interest" test as applied to that particular section of the statute. *O'Rourke* makes clear that a consumer – defined as "any natural person obligated or allegedly obligated to pay any debt" 15 U.S.C. s 1692a(3) – can sue under Section 1692e. Gabriel clearly is a consumer as to the debt in question here. But, by his own admission, Ivan just as clearly is not. Yet *Todd* makes clear that the zone of interest under Section 1692e is broader that consumers alone, notwithstanding *O'Rourke*'s statement that "[a]s a general matter, the Act and its protections do not extent to third parties." 635 F.3d at 943. To be sure, *O'Rourke* recognized that the Act protected "consumers and those who have a special relationship with the consumer" or put slightly differently, "consumers and those who stand in the consumer's shoes and no others." *Id*. at 943-44.

So, what relationships are so "special" as to place a third party in the "shoes" of the consumer and thus confer standing under Section 1692e? The case law reveals several examples. In *Koval v. Harris & Harris, Ltd.*, 2017 WL 1321152, at *1 (N.D. Ill. Apr. 5, 2017), the plaintiff was the legal guardian of her disabled father, had authority to open his mail and make decisions on his behalf, and provided daily care for him. The court concluded that "a daughter who provides

daily care for a disabled parent fits comfortably" within the zone of interest. *Id.* at *2. In *Hill v. Bayside Woods, HOA Inc.*, 2017 WL 529601, at *5-*6 (S.D. Ind. Feb. 9, 2017), by contrast, the court found that an adult daughter of a debtor did not have standing where another individual— the plaintiff's brother—had their father's power of attorney and thus actual authority to step into his shoes. In *Schmitz v. Valentine & Kebartas, LLC*, 2019 WL 6619074, at *4-*5 (E.D. Wis. Dec. 5, 2019), the court rejected any suggestion that a formal designation (such as guardian or power of attorney) should be required, but still looked to allegations that the plaintiffs had "authority to open and read the debtor's letters" in allowing them to "pursue a § 1692e claim." In drawing that line, the *Schmitz* court found persuasive the Sixth Circuit's analysis in *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 649-50 (6th Cir. 1994), in which the § 1692e plaintiff was acting as executrix of her mother's estate and thus had "the same authority as the debtor to open and read the letters of the debtor."

What these cases have in common is the principle that standing must be predicated on some indication—formal or informal—of the plaintiff's authority to act on behalf of the consumer/debtor in regard to the communications at issue. See, *e.g.*, *Wright*, 22 F.3d at 650 (explaining that the phrase "with respect to any person" includes, at a minimum, "those persons, such as Wright, who 'stand in the shoes' of the debtor or have the same authority as the debtor to open and read the letters of the debtor.") Yet *Hill* suggests that a familial relationship alone will not suffice.

Here, as Ivan's complaint concedes, he is not obligated on the debt, nor did Unifin ever suggest that the debt was his. To the contrary, the complaint repeatedly acknowledges that the debt was Gabriel's; Ivan's brief says the same thing; and the context of the call makes abundantly clear that the Unifin representative thought he was speaking with Gabriel. By confirming Gabriel's Social Security number, Ivan led the representative to believe that he was dealing with the actual alleged debtor, and thus someone plainly within the "zone of interests" protected by the FDCPA. But, in reality, Ivan was an imposter (albeit, a well-meaning one, he claims) and had no right to intrude into his sister's business. Indeed, any suggestion that Ivan had Gabriel's permission or authorization to stand in her shoes is belied by the allegations of the complaint itself and Ivan's response brief – in particular, Ivan's contention that his actions embarrassed his sister and resulted in a souring of their relationship [see 23, ¶ 21; see also 48, at 1, 4].[4]

---

[4] For purposes of this opinion, the Court accepts the proposition that "there is no unclean hands defense available to debt collectors under the FDCPA." *Valenta v. Midland Funding*, Case No. 17-cv-6609, Docket No. 95, Memorandum Opinion and Order at 8 (N.D. Ill. Mar. 29, 2019). But this ruling is not an application of an "unclean hands" affirmative defense; rather, it rests on Ivan's failure to establish standing to pursue this statutory cause of action in the first place.

IV.     **Conclusion**

        For the reasons explained above, Defendant Unifin, Inc.'s motion for judgment on the pleadings [39] is granted with prejudice.  Judgment will be entered in favor of Unifin and against Plaintiff Ivan Brown.  Given the earlier settlement between Gabriel Brown and Unifin, Defendant Unifin will be dismissed from this case in its entirety.  The case between Plaintiffs and Defendant CACH will proceed, with fact discovery to close in 28 days and a joint status report to be filed within 30 days thereafter [see 43, 50, 51].


Dated:  September 10, 2021                              _____
                                                       Robert M. Dow, Jr.
                                                       United States District Judge